## NORTH GERMAN LLOYD v. ELTING, Collector of Customs.

District Court, S. D. New York.

Aug. 14, 1930.

John M. Lyons, of New York City (Mark E. Cymrot, of New York City, of counsel), for plaintiff.

Charles H. Tuttle, U. S. Atty., of New York City (George B. Schoonmaker, of New York City, of counsel), for defendant.

WOOLSEY, District Judge.

The plaintiff's motion for judgment on the pleadings is granted.

The Immigration Act of February 5, 1917, provides in section 3 (8 USCA § 136) as follows:

"Sec. 3. That the following classes of aliens shall be excluded from admission into the United States."

Then comes a long list of undesirables, and the section continues:

"Persons afflicted with tuberculosis in any form or with a loathsome or dangerous contagious disease; persons not comprehended within any of the foregoing excluded classes who are found to be and are certified by the examining surgeon as being mentally or physically defective, such physical defect being of a nature which may affect the ability of such alien to earn a living. * * *"

The second sentence of section 9 of the Immigration Act of February 5, 1917 (8 USCA § 145), provides (italics mine):

"It shall also be unlawful for any such person to bring to any port of the United States any alien afflicted with any mental de-

fect other than those above specifically named, or physical defect of a nature which may affect his ability to earn a living, as contemplated in section 3 of this Act, and *if it shall appear to the satisfaction of the Secretary of Labor that any alien so brought to the United States was so afflicted at the time of foreign embarkation, and that the existence of such mental or physical defect might have been detected by means of a competent medical examination at such time,* such person shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $250, and in addition a sum equal to that paid by such alien for his transportation from the initial point of departure, indicated in his ticket, to the port of arrival, for each and every violation of this provision, such latter sum to be delivered by the collector of customs to the alien for whose account assessed."

It was under this provision that the fines herein complained of were imposed on the plaintiff.

The regulations for admission of aliens into the United States, issued by the Department of State March 23, 1929, No. 926, General Instruction Consular Diplomatic Serial No. 273, provides for medical examinations as follows:

"162. In order that certain provisions of section 3 of the immigration act of 1917 above referred to, however, may be complied with, it will be necessary that immigrants be required to present medical certificates showing completely, correctly, and conclusively their physical condition, with special reference to tuberculosis, loathsome or dangerous contagious diseases, or mental or physical defects which will affect the ability of the alien to earn a living. If the applicant suffers from a physical defect so affecting his ability to earn a living as to raise a reasonable presumption that he is likely to become a public charge, the examining consul should require, to rebut this presumption, specific proof as to what extent the applicant's support may be assured by contributions from:

"(a) His own efforts (for example, by part-time work);

"(b) His personal resources (for example, income from investments);

"(c) His relatives or friends in the United States or abroad (for example, their incomes and their ability to share).

"In weighing the force of the above evidence, if it favors the applicant, the consul should give due consideration to the power of the Secretary of Labor, as provided in sec-

tion 21 of the act of February 5, 1917, to admit certain aliens under bond."

Section 21 of the Immigration Act of February 5, 1917 (8 USCA § 158) provides (italics mine):

"Sec. 21. That any alien liable to be excluded because likely to become a public charge or because of physical disability other than tuberculosis in any form or a loathsome or dangerous contagious disease *may, if otherwise admissible, nevertheless be admitted in the discretion of the Secretary of Labor upon the giving of a suitable and proper bond or undertaking, approved by said Secretary, in such amount and containing such conditions as he may prescribe,* to the United States and to all States, Territories, counties, towns, municipalities, and districts thereof, holding the United States and all States, Territories, counties, towns, municipalities, and districts thereof harmless against such alien becoming a public charge."

The physical defect required for exclusion of an alien under the provisions of section 3 is such a defect as may affect his ability to earn a living.

That such defect must be considered from several angles is shown by the above-quoted instructions to consuls, No. 162, in regard to medical certificates of aliens desiring to embark at a foreign port for the United States. In that instruction the consuls are told that, in cases where the ability to earn a living has to be questioned, to bear in mind that the Secretary of Labor has discretionary powers under section 21 of the Immigration Act of 1917 to admit aliens whose earning status is doubtful, on such bond as he may wish to fix.

It seems to me that nothing could show more clearly than this instruction that our consuls are expected to leave decision in any slightly doubtful cases to the immigration authorities here.

This being the practical method of dealing with an undoubtedly difficult situation, one is at a loss to see why an ocean carrier, who must be entitled to rely on an American visa for its right to carry the alien to our ports—cf. Compagnie Francaise de Navigation v. Elting (C. C. A.) 19 F.(2d) 773, 774—should be fined on arrival here because it did not challenge the visa in some manner not explained by the defendant. As a practical matter, I do not see what a steamship company could do to safeguard itself under such circumstances short of refusing to carry any immigrants to our ports.

The question here is not whether the immigrant should or should not be excluded, but whether a carrier wholly guiltless of intentional wrong, and induced to carry an immigrant by this apparent regularity of the visa issued by our government, should be punished when it happens that investigation here shows that the visa was inadvisedly granted by the consul.

To put the government's proposition in its ultimate form: I am asked to sustain a defense to the complaint—unless, of course, the Secretary of Labor acted arbitrarily— which asserts that the government may fine the plaintiff if the opinion of the Secretary of Labor turns out to be different from the opinion of the consul. To state such a proposition is to refute it.

The denials in the defendant's answer must be deemed to be merely colorable, for it was his business to know the facts which he now denies in order to justify in any way the fines which he collected from the plaintiff and which are the subject-matter of the instant suit.

An order providing for judgment for the plaintiff on the pleadings may be presented for settlement on two days' notice.